398 P.2d 899

**STATE of Arizona, Appellee,**

v.

**Joe Lewis CURRY, Appellant.**

**No. 1311.**

Supreme Court of Arizona.

En Banc.

Feb. 4, 1965.

Rehearing Denied Feb. 25, 1965.

Robert W. Pickrell, Atty. Gen., Merton E. Marks, Asst. Atty. Gen., for appellee.

Lewis, Roca, Scoville, Beauchamp & Linton, by David L. Grounds, Phoenix, for appellant.

McFARLAND, Justice.

Appellant was convicted of the crime of illegal sale of narcotics, filed under A.R.S. § 36–1002, § 36–1020 (1956), and sentenced to serve not less than twelve years nor more than eighteen years in the State Penitentiary. From the judgment and sentence he appeals.

The facts of this case show that Alfred Moore, a narcotics agent, picked up one Arthur Butler on the night of October 5, 1961, and went to the home of appellant, Joe Lewis Curry, hereinafter called defendant, who lived on 12th Avenue about half a block south of Buckeye Road, in Phoenix, Arizona, at about 10:20 p. m.

Arthur Butler then went to the door of defendant's house, and, after a conversation with defendant, came back to the car, which was parked—according to testimony of Moore and Butler—at a distance of about twenty feet from the house with the back end of the car almost even with defendant's door. Moore gave Butler $3.00. Butler then returned to the house, gave Curry the $3.00, and received three cigarettes rolled in brown paper. Moore testified that Butler received them in his left hand, and he observed that he kept them in the same hand, returned to the car, and handed them to Moore.

The cigarettes, which were identified in court and used in evidence, were analyzed and revealed to contain marijuana. Defendant did not take the stand, but called as a witness his wife, Connie Curry, who testified that she had returned home shortly after ten o'clock, had gone outside, and that she saw Butler go toward the house on foot, but did not see the car nor see him go to the door. Two other witnesses—defendant's brother, Willie Clyde Curry, and his next-door neighbor, Frank Gilder—testified for defendant, and gave negative evidence attempting to prove that Moore could not have seen Butler go to the door of the house from where the car was parked.

Defendant contends as the basis for his appeal

1. That the statute under which he was convicted—§ 36–1001 et seq. (1956)—is unconstitutional on the grounds of vagueness, indefiniteness, and uncertainty. He also contends that A.R.S. § 36–1001, Paragraph 13(a), is vague and indefinite.

2. That there was prejudicial error committed by the attorney in asking certain questions upon direct examination.

The defendant's contentions will be considered in the order heretofore set forth.

Defendant states that the statute is vague, indefinite and uncertain, contending it is impossible to determine what the legislature meant when it used the word "marihuana" in defining a narcotic as applied to marihuana and cannabis, and for this reason the act is unconstitutional.

Sec. 36–1002 provides:

"It is unlawful for any person to manufacture, possess, have under his control, sell, prescribe, administer, dispense or compound any narcotic drug, except as authorized in this article."

Sec. 36–1001, Paragraph 14:

" 'Narcotic drugs' means coca leaves, opium, cannabis, isonipecaine, amidone, isoamidone, ketobemidone and any substance neither chemically nor physically distinguishable from them."

Sec. 36–1001, Paragraph 13:

" 'Cannabis' includes the following substances under whatever names they may be designated:

"(a) Mariahuana (Marihuana).

"(b) The dried flowering or fruiting tops of the pistillate plant cannabis satina (sativa) L., from which the resin has not been extracted.

"(c) The resin extracted from such tops.

"(d) Every compound, manufacture, salt, derivative, mixture or preparation of such resin, or of such tops from which the resin has not been extracted."

■ In determining the meaning of the word "marihuana," as used in Paragraph 13, all three of these sections must be construed as a whole. The contention of the defendant in regard to those three is directed to the definition of the word "cannabis" —that it is synonymous with the word "marihuana."

Defendant claims that Paragraph 13(a) of· Sec. 36–1001 is vague, indefinite, and uncertain in listing "marihuana," which he states is synonymous with the word "cannabis," and is therefore merely another name for the same thing. For this reason he claims it is impossible to determine what the legislature meant when it used the word "marihuana" in subparagraph (a).

Sec. 36–1002 refers to a narcotic drug. Hence, the word "marihuana" was used to describe one of the parts of the cannabis containing narcotics, the possession and sale of which was made unlawful except as authorized by law.

■ We do not think there could be any question as to the reason and purpose of the law in making the prohibition in regard to the use of narcotic drugs as provided for in Sec. 36–1002. The legislature recognized its possible harmful effect. The intent was to prohibit the illegal use and sale of narcotics. The words of the statute are to be given their ordinary meaning unless it appears from context or otherwise that a different sense was intended. State Board of Dispensing Opticians v. Schwab, 93 Ariz. 328, 380 P.2d 784 (1963).

In the case of State v. Navaro, 83 Utah 6, 26 P.2d 955 (1933), the defendant was convicted of the crime of unlawful possession of marijuana. The statute under which the charge was made, among other things, provides that it is unlawful to sell:

"* * * flowering tops and leaves, extracts, tinctures, and other narcotic preparations of hemp or loco weed, (cannabis sativa, Indian hemp), mariguana, or chloral hydrate, or any of the salts, derivatives, or compounds of the foregoing substances, or any preparation or compound containing any of the foregoing substances, or their salts, derivatives, or compounds. * *"

The court, in discussing the meaning of the word "marijuana," stated:

"While in some of the articles to which we have referred the word 'mariguana' is used indiscriminately with reference to the plant, the drug, or the flowering tops and leaves of cannabis sativa, the preponderant use of the word, we think, is clearly with reference to the product which is used for smoking. Such use is so frequent and common that no one can misunderstand when the statute prohibits its unauthorized possession or sale as a drug. The information in this case charges the unlawful possession of mariguana in the language of the statute, and that is sufficient.

\*　\*　\*　\*　\*　\*

"Had it been the legislative intent by the amendment of 1927 when the word 'mariguana' was inserted to use such word as the name of a plant instead of a drug, undoubtedly the Legislature would have used some such language as this, 'The mariguana plant or weed,' instead of merely inserting the word 'mariguana,' which, as we have seen, is commonly used to refer to the narcotic product of the plant cannabis sativa."

The courts in other states have held, where the word "marijuana" is used, under similar statutes it properly means the narcotic product of the plant. State v. Miller, 50 Del. 286, 129 A.2d 548 (1957); Fawcett v. State, 137 Tex.Cr.R. 14, 127 S.W.2d 905 (1933).

■ We therefore conclude that the word "marihuana" as used in (a), under Paragraph 13 of A.R.S. § 36–1001 (1956), means the narcotic product of the plant cannabis sativa, and is not vague, indefinite, or uncertain.

The second contention related to the following testimony of Arthur Butler:

"Q Mr. Butler, have you ever made any purchases of marihuana from Curry before?

"DEFENSE ATTORNEY: If the Court please, I object—

"WITNESS: No.

"DEFENSE ATTORNEY: May I approach the bench?

"THE COURT: The answer is no, the answer may stand.

"DEFENSE ATTORNEY: I'm sorry, your Honor?

"THE COURT: The answer was no. The answer may stand.

"DEFENSE ATTORNEY: May I make a record out of the hearing of the jury?"

Then the attorney for defendant, at the bench out of the hearing of the jury, made objection to the question upon the ground that it was immaterial and irrelevant, and prejudicial to the defendant, and moved for a mistrial on the ground that its only relevancy was to tend to bias and prejudice the jury, and that it was immaterial to the facts of the case.

 This court has held that testimony to the jury which would give an inference of another offense is error if it does not come under specified exceptions. State v. Gallagher, 97 Ariz. 1, 396 P.2d 241 (1964); State v. Jacobs, 94 Ariz. 211, 382 P.2d 683 (1963); State v. Hunt, 91 Ariz. 149, 370 P.2d 642 (1962). The testimony in the instant case was not offered for the purpose of impeachment or any of the usual exceptions to the rule. We do not agree that the jury could have got the impression of another offense from the record in this case. The question was asked, "Have you ever made any purchases of marihuana from Curry before?" The inference here was favorable to defendant because the state's own witness answered "No." The trial court was evidently of the opinion that it was favorable to defendant because he immediately stated "The answer may stand." and then denied the motion for a mistrial.

In People v. Bigelow, 104 Cal.App.2d 380, 231 P.2d 881, 885 (1951), the court stated:

"An answer to an improper question that is favorable to the defendant is a complete reply to a claim of prejudicial error in asking the question."

In People v. Sorrentino, 146 Cal.App.2d 149, 303 P.2d 859, 869 (1956), the court stated:

"There was no prejudicial error committed in overruling an objection to a question where the answer was favorable to appellant."

Any possible error was cured by the negative answer. The question and answer were favorable to defendant.

Judgment in this case is affirmed.

LOCKWOOD, C. J., STRUCKMEYER, V. C. J., and BERNSTEIN and UDALL, JJ., concurring.