432 P.2d 882

**SNARR ADVERTISING, INC., a corporation,**
Plaintiff,

v.

**The UTAH STATE TAX COMMISSION,**
Defendant.

No. 10808.

Supreme Court of Utah.

Oct. 25, 1967.

Parsons, Behle, Evans & Latimer, Keith E. Taylor, Gordon L. Roberts, Salt Lake City, for plaintiff.

Phil L. Hansen, Atty. Gen., Salt Lake City, for defendant.

## 56

ELLETT, Justice:

This case is before us for a review of a matter determined by the Utah State Tax Commission based on a stipulation of facts.

The plaintiff sells to clients custom-made advertising displayed on unique and individually constructed roadside signs. The contracts between plaintiff and its clients are usually for a term of years with the duty on the plaintiff to maintain the signs. The customer pays a specified sum of money monthly to the plaintiff during the life of the contract. The client has no right to possession of the sign, nor has he any other rights therein except the right to have the sign remain on public display and a hope for an increase in business as a result of the advertising thereon displayed. The cost of constructing the sign and erecting it amounts to approximately fifteen per cent of the total rentals paid by the customer. The remaining eighty-five per cent includes costs paid to the landowner by way of purchase of the land or rental thereof and the cost of acquiring the site (realtor's commission, etc.), electrification, and lighting of the structure, the rotation of the advertisements and structures from place to place, the maintenance of the sign during the agreement, sales services, artistic services, and profits.

The Tax Commission now undertakes to tax the entire rentals received by the plaintiff under the authority of Section 59–15–2 (g), U.C.A.1953, which reads as follows:

When right to continuous possession or use of any article of tangible personal property is granted under a lease or contract and such transfer of possession would be taxable if an outright sale were made, such lease or contract shall be considered the sale of such article and the tax shall be computed and paid by the vendor or lessor upon the rentals paid.

The question here to be determined is simply this: Is billboard advertising subject to the sales tax under the above section?

Originally, a statute was enacted to tax the sale of tangible personal property. To avoid paying the tax, many transactions were made under the guise of a long-term lease of personal property, usually for the estimated life of the article in question. Possession and control were given to the lessee, and the rentals to be paid were roughly the same as installment payments would have been had the property been purchased on conditional sales contracts. To plug this loophole, the Legislature in 1937 (Chapter 110, Section 2(g)), amended the law to read as above quoted.

There can be no doubt that if the tangible sign only was sold to a customer, a tax on the sale price would be due. However, renting an outdoor advertising sign and agreeing to keep it serviced at a price greatly disproportionate to the cost of the sign gives rise to a serious consideration

as to whether such a transaction was meant to be within the statute.

The leasing of a typewriter for five years, the estimated life of the machine, at a rental commensurate with its selling price and the delivery of possession to the purchaser so he would have the exclusive use thereof would be taxable under the statute, because here the rental is a subterfuge in effect for a sale.

██ Until 1963, some twenty-six years after the statute was passed, the Tax Commission made no effort to collect a tax on outdoor advertising. This would not prevent the Commission from alerting itself to an error in collecting the tax if it was proper to do so. (See Union Pacific v. State Tax Commission, 19 Utah 2d 92, 426 P.2d 231). However, the fact that no tax was assessed for some twenty-six years of time lends strength to the proper presumption of the validity of the original interpretation. During this time some thirteen regular sessions of the Legislature convened, and at no time was there any attempt made to correct the law so as to change the interpretation placed thereon by the Tax Commission.

Even now, Regulation S–65 promulgated by the Tax Commission is in full force and effect and excludes the taxing of advertising space sold in newspapers, magazines, or otherwise, as well as art work produced in the office of the advertiser for the purpose of visualization of any idea. The regulation is in the following words:

Advertising space sold in newspapers, magazines, *or otherwise* is not subject to tax. Likewise, charges made by advertising agencies for preparing and placing advertising media are charges for service and, therefore, are not taxable. (Emphasis added.)

\* \* \* \* \* \*

The tax does not apply with respect to art work produced with the office of the advertiser or the advertising agency for the purpose for visualization of any idea and the client's selection of the particular visualization he favors for use in his advertisements. The sale of materials to the advertiser or advertising agency for producing such art work is subject to tax.

Regulation S–32 of the State Tax Commission, still in force and effect, provides:

Tax on receipts of leases and rentals applies when the lessee has the right to *use and operate* the tangible personal property. (Emphasis added.)

██ In the instant case, possession of the sign is never given to a customer, and no *use* thereof is had unless it be thought that calling attention of the public to the advertiser's business is a use. In that regard the customer gets one hundred per cent of the use, but we think the Legislature had in mind a different use than this evanescent possibility. We think the Legislature meant to tax those pieces of

personal property the possession or use of which was given over to the lessee. The benefit which the customer derives from dealing with outdoor advertisers is not of a tangible thing. It is a service similar to that which would be had if a hired man was stationed where the sign is located and by the use of a megaphone called attention of the passing public to the merits of the customer's merchandise or service, as the case might be. It is a service similar to that of a pied piper who pipes the public to the location of the customer's business.

It is our opinion that the holding of the Tax Commission is erroneous and that it should be and it is hereby reversed. Each party to bear its own costs.

CALLISTER, TUCKETT, and HENRIOD, JJ., concur.

CROCKETT, Chief Justice (dissenting):

I cannot agree with the main opinion because to my mind it involves a misapplication of the facts in relation to the controlling statute and departs from previously established decisional law in an unwarranted overturning of the conclusion arrived at by the Tax Commission. Notwithstanding our prerogatives on review,[1] due to the assumed expertise of the Tax Commission because of its specialized knowledge and experience in its field and its advantaged position with respect to the proceeding involved, this court has recognized its duty to indulge some deference to the Commission's findings and conclusions and not overturn them unless they are shown to be clearly erroneous in that there is no reasonable basis in the evidence upon which they can be sustained.[2]

After a full hearing and consideration of all of the pertinent facts relating to the type of transaction here involved, which is the leasing of custom-made billboards for a term of years, the Commission made the following findings, which, as I view it, are controlling and have a reasonable basis for support in the evidence: that in the class of transactions in question, the clients of the plaintiff obtain a right of continuous possession and use of the billboards furnished by the plaintiff; that they exercise a proprietary interest and control over them; and that if the plaintiff had sold the billboards to the clients, there would have been a sales tax, so that the transactions come within the meaning of Sec. 59–15–2 (g) U.C.A.1953, quoted in the main opinion.

If these findings and the Commission's conclusion are to be overturned, it should be incumbent upon the court to state the reasons with clarity, so that the findings

1. U.C.A. 59–15–14.
2. Western Leather and Finding Co. v. State Tax Commission of Utah, 87 Utah 227, 48 P.2d 526; McKendrick v. State Tax Commission, 9 Utah 2d 418, 347 P. 2d 177.

are not merely brushed aside. With respect to the right of continuous use the opinion states, " * * * no use thereof is had unless it be thought that calling attention of the public to the advertising business is a use. * * * " and that " * * * [W]e thing the Legislature had in mind a different use than this evanescent possibility." What the statute states is that there be given the lessee the right of continuous possession *or* use of the personal property. The opinion correctly admits that in such a transaction there would be sales tax if the billboards were sold outright to the client. It is submitted that this is the very type of transaction in which the statute referred to was designed to prevent the use of a lease instead of a sale as a subterfuge to escape payment of a sales tax.

Some question may be raised as to the lessee's right of possession of the billboards, since they are usually on other people's land and the contracts do not give them any specific right to detailed physical control. On the other hand, the right to specify the location and manner of use is effectively in the hands of the client who pays for the service. Inasmuch as he has this right to exercise dominion over the billboard, I do not see how it can fairly and logically be said that the Commission was in error in its finding that he has such a property interest as to amount to a "right of possession" within the meaning of the statute.

In regard to the provision that the tax should be imposed if the client has the right to the continuous *use* of the property, the decision of the Commission is on even firmer ground. Suppose the client did in fact purchase the sign: what possible use could he put it to other than the use for which he leases it from the plaintiff. If placing the sign along public thoroughfares and advertising his business on it is not a use of the sign, but instead is only an "evanescent possibility," I confess my inability to perceive what a "use" of such a sign would be. Without belaboring the obvious in this regard, it should further be noted that the record squarely supports the Commission in that one of the plaintiff's own clients who testified at the hearing said that they "leased the privilege to *use*" the signs.

The point made that some importance should be attached to the fact that the Commission has not heretofore taxed these billboard transactions is not persuasive. The record is devoid of any indication that the matter has ever previously been before the Commission, or that it has made any determination thereon.

The fact that the materials used to construct the signs amounted to only about 15% of the total charge to the client is not of controlling importance. It is the nature of the final product which is sold or leased, rather than the original value of the raw materials of which it is made, in relation to

the skill and labor necessary to produce it, which determines whether it is taxable.[3] It should hardly be necessary to state that the Commission was not obliged to follow the opinions of plaintiff's client witnesses, obviously interested in the nontaxation of these billboards, who said they considered they were paying for a service.

The analogy suggested of a barker rendering a personal service by using a megaphone calling attention to one's business, is so overdrawn and unlike the leasing of these billboards that it can serve only to emphasize the basic unsoundness and difficulty encountered by the main opinion's attempt to justify the overturning of the judgment of the Tax Commission.

It is difficult to appreciate why reliance is placed on the Commission's regulation S-65 that advertising space in newspapers, magazines or otherwise is not subject to sales tax. The running of advertising in newspapers and magazines is quite obviously something of a different character which does not in any way involve the possession or use of tangible personal property as does the leasing of these billboards. The latter are tangible personal property, the signs themselves, which, as the main opinion admits, would be subject to sales tax if an outright sale were made. This is the premise which justifies the imposition of the tax.

Reasoning from what I have said above leads me to these conclusions: that the Tax Commission was within its prerogative in making the determination that the leasing of these billboards for a term of years was a transaction which well may be considered as a substitute for a sale and which "would be taxable if an outright sale were made," and therefore under the provision of Section 59-15-2(g) U.C.A.1953, was subject to a sales tax; and that under the Rules of Procedure hereinabove quoted, there is no basis upon which this court can properly nullify its findings and decision. Accordingly, they should be sustained.

---

3. See discussion in McKendrick v. State Tax Comm.; see also Western Leather and Finding Co. v. State Tax Commission of Utah, supra; Young Electric Sign Co. v. State Tax Commission, 4 Utah 2d 242, 291 P.2d 900.